UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| Holly Harris, on behalf of herself and all others similarly situated, | § § | Cause No. 2:15-cv-405 |
| Plaintiff, | § | |
| | § | <u>CLASS ACTION</u> |
| v. | § | |
| | § | **CLASS ACTION** |
| | § | **COMPLAINT** |
| VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey Corporation, | § § | **<u>JURY TRIAL DEMANDED</u>** |
| Defendant. | § | |

Plaintiff Holly Harris ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class"), allege the following:

## I.   FACTUAL ALLEGATIONS

1.    To protect United States citizens and residents, the Environmental Protection Agency ("EPA"), an agency of the United States Government, regulates the emission of harmful and toxic pollutants, through laws and regulations that extend to car manufacturers.

2.    Since at least 2009, Defendant Volkswagen Group of America ("Volkswagen") evaded these laws and regulations by selling in the United States vehicles manufactured by its affiliates Volkswagen AG and Audi AG that had installed in them illegal "defeat devices."  These "defeat devices" are found in

Volkswagen's Volkswagen and Audi diesel vehicles for model years 2009-2015.

3.      Despite knowingly and purposefully installing the "defeat device" in these diesel vehicles, Volkswagen continued to market and sell the vehicles as though they were fully compliant with the applicable EPA laws and regulations.

4.      On September 18, 2015, the EPA completed part of its investigation of Volkswagen's misfeasance.   In its "Notice of Violation" ("NOV"), the EPA declared that Volkswagen's "defeat devices" "bypass, defeat, or render inoperable elements of the vehicles' emission control system that exist to comply with [Clean Air Act] emission standards."   The EPA further found that these vehicles do not satisfy the applications for the certificates of conformity that all vehicle manufacturers must obtain for each vehicle they intend to sell in the United States.

5.      The EPA described Volkswagen's "defeat device" as a "switch" that senses when the vehicle's emissions are being tested.  If the vehicle's emissions are being tested, its electronic control module will output results that comply with EPA emissions standards.  When the vehicle is not being tested, however, the switch is deactivated, allowing the electronic control module to reduce the effectiveness of the system that controls emissions, effectively increasing emissions of the pollutant nitrogen oxide ("NOx") by a factor of 10 to 40.

6.      NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine

particulate matter. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illnesses serious enough to force people to seek hospital treatment. Ozone and particulate matter exposure have been associated with premature death due to respiratory or cardiovascular-related effects. Children, the elderly, and people with preexisting respiratory illnesses are at an acute risk of health complications from these pollutants.

7.    Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal laws when it manufactured and sold these vehicles with "defeat devices."

8.    The EPA noted that Volkswagen installed "defeat devices" in at least the following vehicles (the "Subject Vehicles"):  MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2013-2015 VW Passat; and MY 2009-2015 Audi A3.  Discovery may reveal that additional vehicle models and model years are properly included as Subject Vehicles.

9.    Volkswagen marketed and advertised the Subject Vehicles as "CleanDiesel." It marketed and advertised them as clean, powerful, and EPA-certified in all 50 states.  Beginning with the 2009 model year, Volkswagen began an aggressive marketing strategy to increase its market share of diesel powered vehicles in the United States by touting its "clean diesel" line of vehicles.

10.    When asked in an October 2009 interview with Business Insider, "[w]hat is

the advantage of a diesel over a hybrid," VW of America's chief operating officer,

Mark Barnes, stated:

> It's also good for the environment because it puts out 25% less greenhouse gas emissions than what a gasoline engine would. And thanks to the uniqueness of the TDI motor, it cuts out the particulate emissions by 90% and the emissions of nitrous oxide are cut by 95%. So, a very very clean running engine. Clean enough to be certified in all 50 states.

Gayathri Vaidyanathan, "Volkswagen Preps for a Diesel Revolution," The

Business Insider, Oct. 2009 (emphasis added).

11.    In that same interview, when asked "how do you re-brand something that's

dirty like diesel as something that's green," Barnes stated:

> The way we've gone about it is through a number of communication pieces. One of them we've used is TDI Truth & Dare. It is a very good website that compares some older diesels versus the current TDI clean diesel. And one of the things we do is we put coffee filters over the exhaust pipes of both cars. We let them run for five minutes and after they are done, we take them off and the older diesel product (not a VW diesel) has a round sooty spot on that coffee filter. Ours is very clean. In fact they actually make coffee out of the filter that was attached to the Volkswagen clean diesel tail pipe and they drink it.

12.    In an extremely effective effort to boost sales of its line of diesel vehicles,

Defendants implemented aggressive national marketing campaigns to raise

consumer awareness of what it purported to be its "TDI Clean Diesel Technology."

One example of such marketing efforts was the following print advertisement:



13.   In another widely seen video advertisement aired by Volkswagen, three elderly ladies argue about whether diesel is dirty.



14.    After some bickering, one of the women puts her white scarf up against the

exhaust pipe and then holds it up to her face, furthering Volkswagen's contention

that diesel is clean.





15.    Volkswagen highlighted the fuel efficiency of the TDA "CleanDiesel" along with its cleanliness. In fact, Volkswagen even charged a substantial premium for the Subject Vehicles.  For example, for the 2015 Volkswagen Jetta, the base S model has a starting MSRP of $18,780. The base TDI S "CleanDiesel," however, has a starting MSRP of $21,640, a price premium of $2,860. The "CleanDiesel" premium for the highest trim Jetta model is substantially higher: The highest level gas Jetta SE has a starting MSRP of $20,095, while the "CleanDiesel" TDI SEL MSRP is $26,410, a staggering $6,315 premium.

16.    Volkswagen charged these premiums for all Subject Vehicles, and the table below sets forth the price premium for each base, mid-level and top-line trim for each Subject Vehicle model:

### "CleanDiesel" Price Premiums

| Model | Base | Mid-level | Top-line |
|-------|------|-----------|----------|
| *VW Jetta* | $2,860 | $4,300 | $6,315 |
| *VW Beetle* | $4,635 | n/a | $2,640 |
| *VW Golf* | $2,590 | $1,000 | $1,000 |
| *VW Passat* | $5,755 | $4,750 | $6,855 |
| *Audi A3* | $2,805 | $3,095 | $2,925 |

17.    The EPA ordered Volkswagen to recall the Subject Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation.  However, the modifications necessary to make the Subject Vehicles

EPA and Clean Air Act compliant will substantially degrade the Subject Vehicles'
horsepower, efficiency, and other performance characteristics upon which Subject
Vehicle owners or lessees based their purchasing decisions.   Thus, even if
Volkswagen makes the Subject Vehicles EPA and Clean Air Act compliant, Class
members will still suffer actual harm and damages.   Once repaired, their vehicles
will no longer perform as advertised and as they did when they were acquired,
causing a diminution in value.

18.    Volkswagen's CEO has admitted that the EPA's allegations are true, stating
on September 20, 2015 that he is "personally and deeply sorry that we have broken
the trust of our customers and the public."

19.    As a result of Volkswagen's unfair, deceptive, and/or fraudulent business
practices, and its failure to disclose that under normal operating conditions the
Subject Vehicles emit 40 times the allowed NOx levels, owners and/or lessees of
the Subject Vehicles have suffered losses in money and/or property.

20.    Had Plaintiff and Class members been aware at the time they acquired their
Subject Vehicles of the "defeat device" and its ability to allow the Subject Vehicles
to emit up to 40 times the allowed levels of pollutants, Plaintiff and Class members
would not have purchased or leased said vehicles, or would have paid substantially
less than they did.

21.    Furthermore, if and when Volkswagen makes the required alterations to

bring the Subject Vehicles into EPA and Clean Air Act compliance, Plaintiff and Class members will be required to spend additional sums of money on fuel and will no longer enjoy the performance characteristics which existed in their Subject Vehicles when purchased. Additionally, the Subject Vehicles will necessarily be worth less in the marketplace because of their diminished performance and efficiency—the consequence of bringing the vehicles into regulatory compliance.

22.    Plaintiff brings this action individually and on behalf of all other current and former owners or lessees of Subject Vehicles. Plaintiff seeks damages, injunctive relief, and equitable relief for the conduct of Volkswagen related to the "defeat device," as alleged in this complaint.

## II.    JURISDICTION

23.    This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.    VENUE

24.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff Holly Harris resides in this District, purchased her Subject

Vehicle in this District, and Volkswagen marketed, advertised, sold, and leased the Subject Vehicles within this District.

## IV.   PARTIES

### A. Plaintiff Holly Harris

25.   Plaintiff Holly Harris is an individual residing in Nueces County, Texas. Plaintiff purchased her 2012 Volkswagen Jetta diesel from Corpus Christi Subaru in Corpus Christi, Texas.  Plaintiff's 2012 Jetta is one of the Subject Vehicles.

26.   When she purchased her 2012 Jetta, Plaintiff did not know that Volkswagen had installed the "defeat device," which caused her vehicle to improperly obtain an EPA certificate of conformity and to improperly pass emissions tests.  She did not know that Volkswagen's actions would allow her 2012 Jetta to emit up to 40 times the allowed level of pollutants, including NOx.

27.   Plaintiff did, however, pay a premium for her so-called "CleanDiesel" 2012 Jetta.

28.   Volkswagen's use of the "defeat device" caused Plaintiff out-of-pocket monetary loss, future attempted repairs, and a decrease in the value of her vehicle.

29.   Volkswagen knew about and purposefully installed the "defeat device," but did not disclose the "defeat device" and it effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that her vehicle complied with United States emissions standards, was properly EPA certified, and would retain

all of its operating characteristics throughout its useful life.

30.    Volkswagen's purported "CleanDiesel" system induced Plaintiff to select and purchase her 2012 Jetta.   Volkswagen, through advertisements and representations, touted the environmental friendliness of the 2012 Jetta's engine, and the performance and efficiency with which it supposedly operated.

31.    Specifically, prior to her purchase of the vehicle, Plaintiff viewed television advertisements regarding the CleanDiesel engine system, and a representative of the dealership made verbal representations about the CleanDiesel system to Plaintiff.   Plaintiff recalls Volkswagen's advertisements and representations regarding the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the "defeat device" or that Volkswagen had purposefully falsified its certification of EPA compliance. Had Volkswagen disclosed that the CleanDiesel in her vehicle actually emitted 40 times the permitted levels of pollutants, including NOx, she would not have purchased her vehicle with the CleanDiesel engine, or would have paid less for the vehicle.

32.    Plaintiff has suffered an ascertainable loss as a result of Volkswagen's omissions and/or misrepresentations associated with the CleanDiesel engine system, including but not limited to, out-of-pocket loss and future attempted

repairs, future additional fuel costs, and diminished value of her vehicle.

33.    Neither Volkswagen nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the "defeat device" and/or defective design of the CleanDiesel engine prior to purchase.

### B. Defendant

34.    Volkswagen Group of America, Inc. ("Volkswagen") is a corporation doing business in all 50 states (including the District of Columbia) and is organized under the laws of the State of New Jersey, with its principal place of business located at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. At all times relevant to this action, Volkswagen manufactured, distributed, sold, leased, and warranted the Subject Vehicles under the Volkswagen and Audi brand names throughout the United States. Volkswagen and/or its agents designed, manufactured, and installed the CleanDiesel engine systems in the Subject Vehicles, which included the "defeat device." Volkswagen also developed and disseminated the owner's manuals and warranty booklets advertisements, and other promotional materials relating to the Subject Vehicles.

### V.    TOLLING OF THE STATUTE OF LIMITATIONS

### A. Discovery Rule Tolling

35.    Until the EPA announced the findings of its ongoing investigation, Class members had no way of knowing about Volkswagen's purposeful violation of

EPA's laws and regulations through the use of the "defeat device." It took federal EPA and California Air Resources Board investigations to uncover Volkswagen's deception, which involved sophisticated software manipulation on Volkswagen's part. The Los Angeles Times reported on September 18, 2015 the substantial investigations by the California Air Resources Board required to uncover Volkswagen's deceit. The Board tested on a special dynamometer in a laboratory, utilized open road testing with portable equipment, and used special testing devised by the Board to uncover Volkswagen's misfeasance. Plainly, Volkswagen was intent on expressly hiding its behavior from regulators and consumers.

36.     Within the time period of any applicable statutes of limitation, Plaintiff and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Volkswagen was concealing the conduct complained of herein and misrepresenting the Company's true position with respect to the emissions qualities of its vehicles.

37.     Plaintiff and the other Class Members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Volkswagen did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Volkswagen had information in its possession about the existence of its sophisticated emissions scheme and that it opted to conceal that information,

which was discovered by Plaintiff only shortly before this action was filed. Nor in any event would such an investigation on the part of Plaintiff and other Class members have disclosed that Volkswagen valued profits over compliance with federal and state law, or the trust that Plaintiff and other Class members had placed in its representations, or that, necessarily, Volkswagen actively discouraged its personnel from raising or disclosing issues with regard to the true quality and quantity of the emissions, and the emissions software, of its vehicles, or of Volkswagen's emissions scheme.

### B. Fraudulent Concealment Tolling

38.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to all vehicles identified herein.

39.     All applicable statutes of limitation have also been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

40.     Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the subject vehicles were far worse than represented, and of its disregard of federal and state law, Volkswagen falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

14

### C. Estoppel

41.    Volkswagen was under a continuous duty to disclose to Plaintiff and the other Class members the true character, quality, and nature of emissions from the vehicles at issue, and of those vehicles' emissions systems, and of the compliance of those systems with applicable federal and state law.

42.    Volkswagen knowingly, affirmatively, and actively concealed the true nature, quality, and character of the emissions systems, and the emissions, of the vehicles at issue.

43.    Volkswagen was also under a continuous duty to disclose to Plaintiff and Class members that it had engaged in the scheme complained of herein to evade federal and state emissions and clean air standards, and that it systematically devalued compliance with, and deliberately flouted, federal and state law regulating vehicle emissions and clean air.

44.    Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

## VI.    CLASS ALLEGATIONS

45.    This lawsuit is a class action brought pursuant to the Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1)-(3) on behalf of the following class and subclass (collectively, "the Class"):

**The Nationwide Class**

All persons or entities in the United States who are current or former owners and/or lessees of a "Subject Vehicle." Subject Vehicles include, without limitation: 2009-2015 VW Jettas; 2009-2015 VW Beetles; 2009-2015 VW Golfs; 2013-2015 VW Passats; and 2009-2015 Audi A3s.

**The Texas Subclass**

All persons or entities in the state of Texas who are current or former owners and/or lessees of an "Subject Vehicle." Subject Vehicles include, without limitation: 2009-2015 VW Jettas; 2009-2015 VW Beetles; 2009-2015 VW Golfs; 2013-2015 VW Passats; and 2009-2015 Audi A3s.

46.   The Class does not include individuals with personal injury claims resulting from the "defeat device" in the CleanDiesel system. The Class also does not include Volkswagen and its subsidiaries and affiliates; any persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family.  Plaintiff reserves the right to amend the definition of the Classes following discovery.

47.   Plaintiff's claims are appropriate for class certification because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions involving the same claim.

48.   This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23 and the requirements for class certification have been satisfied.

49.     **Numerosity Pursuant to Federal Rule of Civil Procedure 23(a)(1):** The

Classes members are so numerous and geographically dispersed that individual

joinder of all Class members is impracticable. While Plaintiff is informed and

believes that there are not less than hundreds of thousands of members of the

Class, the precise number of Class members is unknown to Plaintiff, however this

number may be ascertained from Volkswagen's records. Class members may

readily be notified of the pendency of this action by recognized, Court-approved

notice dissemination methods, which may include U.S. mail, electronic mail,

Internet postings, and/or published notice.

50.     **Commonality and Predominance Pursuant to Federal Rule of Civil**

**Procedure 23(a)(2) and 23(b)(3):** This action involves common questions of law

and fact, which predominate over any questions affecting individual Class

members, including, without limitation:

      a.   Whether Volkswagen engaged in the conduct alleged herein;

      b.   Whether Volkswagen designed, advertised, marketed, distributed,
leased, sold, or otherwise placed Subject Vehicles into the stream of
commerce in the United States;

      c.   Whether the CleanDiesel engine system in the Subject Vehicles
contains a defect in that it does not comply with US EPA
requirements;

      d.   Whether the CleanDiesel engine systems in Subject Vehicles can be
made to comply with EPA standards without substantially degrading
the performance and/or efficiency of the Subject Vehicles;

e.  Whether Volkswagen knew about the "defeat device" and, if so, how long Volkswagen has known;

f.  Whether Volkswagen designed, manufactured, marketed, and distributed Subject Vehicles with a "defeat device";

g.  Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

h.  Whether Plaintiff and the other Class members overpaid for their Subject Vehicles;

i.  Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

j.  Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

51.  **Typicality Pursuant to Federal Rule of Civil Procedure 23(a)(3):** Plaintiff's claims are typical of the claims of the other Class members.  All Class members were comparably injured through Volkswagen's wrongful conduct as described above.

52.  **Adequacy Pursuant to Federal Rule of Civil Procedure 23(a)(4):** Plaintiff will be a fair and adequate Class representative because her interests do not conflict with the interests of the other members of the Classes she seeks to represent.   Plaintiff's counsel is both competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

53.     **Declaratory and Injunctive Relief Pursuant to Federal Rule of Civil Procedure 23(b)(2):** Injunctive relief and declaratory relief are appropriate because Volkswagen has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes.

54.     **Superiority Pursuant to Federal Rule of Civil Procedure 23(b)(3):** Prosecuting this lawsuit as a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen rendering it impracticable for members of the Class to individually seek redress.  Further, the judicial system would be unnecessarily burdened by individual litigation, which creates the potential for inconsistent and contradictory judgments, and increases the delay and expense to all parties and the court system. On the contrary, certifying a class would streamlines the litigation process, presenting fewer management difficulties, and providing the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.    VIOLATIONS ALLEGED

### A. Claims Brought on Behalf of the Nationwide Class

### COUNT I
### FRAUD BY CONCEALMENT

55.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

56.    This claim is brought on behalf of the Nationwide Class.

57.    Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Subject Vehicles. As alleged in this complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

58.   Plaintiff and Nationwide Class members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiff and Nationwide Class members did not, and could not, unravel Volkswagen's deception on their own.

59.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiff and Nationwide Class members placed in its representations. As one customer, Priya Shah, put it in a quotation cited by the Los Angeles Times in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system. That's just a whole other level of not only lying to the government, but also lying to your consumer. People buy diesel cars from Volkswagen because they feel they are clean diesel cars." In the words of Ms. Shah, which no doubt reflect the sentiments of all other "clean" diesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

60.   Necessarily, Volkswagen also took steps to ensure that its employees did not

reveal the details of its scheme to regulators or consumers, including Plaintiff and Nationwide Class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the Subject vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiff and Nationwide Class members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars, and they paid accordingly.

61.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or Nationwide Class members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its

vehicles with respect to emissions standards, starting with references to them as clean diesel cars, or cars with clean diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Subject Vehicles purchased or leased by Plaintiff and Nationwide Class members. Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiff and Nationwide Class members that they were purchasing clean diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

62.    Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its

vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Nationwide Class members.

63.    On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and Nationwide Class members by concealing material information regarding the emissions qualities of its referenced vehicles and its emissions scheme.

64.    Plaintiff and Nationwide Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Nationwide Class Members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Nationwide Class members.

65.    Because of the concealment and/or suppression of the facts, Plaintiff and Nationwide Class members have sustained damages because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true

quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiff and Nationwide Class members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiff and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

66.    The value of Plaintiff's and Nationwide Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Nationwide Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Subject Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

67.    Accordingly, Volkswagen is liable to Plaintiff and Nationwide Class members for damages in an amount to be proven at trial.

68.    Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Nationwide Class members' rights and the representations that Volkswagen made

to them, in order to enrich Volkswagen. Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT II
## BREACH OF CONTRACT

69.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

70.    Plaintiff brings this Count on behalf of the Nationwide Class.

71.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the CleanDiesel engine system was not EPA-compliant and the existence of the "defeat device" as alleged herein, caused Plaintiff and the other Class members to make their purchases or leases of their Subject Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Class members would not have purchased or leased these Subject Vehicles, would not have purchased or leased these Subject Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain non-EPA-compliant engine systems and a "defeat device." Accordingly, Plaintiff and the other Class members overpaid for their Subject Vehicles and did not receive the benefit of their bargain.

72.    Each and every sale or lease of a Subject Vehicle constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these

contracts by selling or leasing Plaintiff and the other Class members defective Subject Vehicles and by misrepresenting or failing to disclose the CleanDiesel engine system was not EPA-compliant and failing to disclose the existence of the "defeat device," including information known to Volkswagen rendering each Subject Vehicle illegal under U.S. environmental laws, and thus less valuable, than vehicles not equipped with CleanDiesel engine systems.

73.     As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**B. Claims brought on Behalf of the Texas Subclass**

**TEXAS**
**COUNT I**
**VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**
**(Tex. Bus. & Com. Code §§ 17.41, et seq.)**

74.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

75.     Plaintiff intends to assert a claim under the Texas Deceptive Trade Practices Act ("TDTPA"), which makes it unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." TEX. BUS. & COM. CODE § 17.46. Plaintiffs will make a demand in satisfaction of the TDTPA and may amend this Complaint to assert claims under the TDTPA once

the required 60 days have elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the TDTPA.

## COUNT II
## BREACH OF CONTRACT
### (Based On Texas Law)

76.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

77.    This claim is brought on behalf of the Texas Subclass.

78.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the CleanDiesel engine system was not EPA-compliant and the existence of the "defeat device" as alleged herein, caused Plaintiff and the other Texas Subclass members to make their purchases or leases of their Subject Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Texas Subclass members would not have purchased or leased these Subject Vehicles, would not have purchased or leased these Subject Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain non-EPA-compliant engine systems and a "defeat device." Accordingly, Plaintiff and the other Texas Subclass members overpaid for their Subject Vehicles and did not receive the benefit of their bargain.

79.    Each and every sale or lease of a Subject Vehicle constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these

contracts by selling or leasing Plaintiff and the other Texas Subclass members defective Subject Vehicles and by misrepresenting or failing to disclose the CleanDiesel engine system was not EPA-compliant and failing to disclose the existence of the "defeat device," including information known to Volkswagen rendering each Subject Vehicle illegal under U.S. environmental laws, and thus less valuable, than vehicles not equipped with CleanDiesel engine systems.

80.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Texas Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III
## FRAUD BY CONCEALMENT
### (Based On Texas Law)

81.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

82.    This claim is brought on behalf of the Texas Subclass.

83.    Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Subject Vehicles. As alleged in this complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards

by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

84.     Plaintiff and the Texas Subclass members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiff and the Texas Subclass members did not, and could not, unravel Volkswagen's deception on their own.

85.     Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiff and the Texas Subclass

members placed in its representations. As one customer, Priya Shah, put it in a quotation cited by the Los Angeles Times in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system. That's just a whole other level of not only lying to the government, but also lying to your consumer. People buy diesel cars from Volkswagen because they feel they are clean diesel cars." In the words of Ms. Shah, which no doubt reflect the sentiments of all other "clean" diesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

86.    Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and the Texas Subclass members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the Subject vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including

Plaintiff and Texas Subclass members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars, and they paid accordingly.

87.    Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or Texas Subclass members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as clean diesel cars, or cars with clean diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Subject Vehicles purchased or leased by Plaintiff and Texas Subclass members. Whether a manufacturer's products comply with federal and state clean air law and emissions

regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiff and Texas Subclass members that they were purchasing clean diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

88.    Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Texas Subclass members.

89.    On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and Texas Subclass members by concealing material information regarding the emissions qualities of its referenced vehicles and its emissions scheme.

90.    Plaintiff and Texas Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have

purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Texas Subclass members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Texas Subclass members.

91.   Because of the concealment and/or suppression of the facts, Plaintiff and Texas Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiff and Texas Subclass members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiff and Texas Subclass who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

92.   The value of Plaintiff's and Texas Subclass Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions

scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Texas Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Subject Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

93.     Accordingly, Volkswagen is liable to Plaintiff and Texas Subclass members for damages in an amount to be proven at trial.

94.     Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Texas Subclass members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT IV
## UNJUST ENRICHMENT
### (Based On Texas Law)

95.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

96.     This claim is brought on behalf of the Texas Subclass.

97.     As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design defect of their vehicles and the concealment of the defect, Volkswagen charged a higher price for their vehicles than the vehicles' true

value and Volkswagen obtained monies which rightfully belong to Plaintiff.

98.     Volkswagen enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the Texas Subclass, who paid a higher price for vehicles which actually had lower values. It would be inequitable, unjust, and unconscionable for Defendants to retain these wrongfully obtained profits.

99.     Plaintiff, therefore, seek an order establishing Defendants as constructive trustees of the profits unjustly obtained, plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Nationwide Class and Texas Subclass, respectfully request that the Court enter judgment in their favor and against Volkswagen, as follows:

A. Certification of the proposed Nationwide Class and Texas Subclass, including appointment of Plaintiff's counsel as Class Counsel;

B. An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C. Injunctive relief in the form of a recall or free replacement program;

D. Costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

E. An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

F. An award of costs and attorneys' fees; and

G. Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

Respectfully submitted this 22nd day of September, 2015.

/s/ Robert C. Hilliard

Robert C. Hilliard
Texas State Bar No. 09677700
Federal I.D. No. 5912
HILLIARD, MUÑOZ & GONZALES, L.L.P.
719 South Shoreline, Suite 500
Corpus Christi, Texas 78401
Phone: (361) 882-1612
Facsimile: (361) 882-3015
Email: bobh@hmglawfirm.com

***ATTORNEY IN CHARGE FOR PLAINTIFF***

**OF COUNSEL:**

Rudy Gonzales, Jr.
Texas State Bar No. 08121700
Federal I.D. 1896
Email rudy@hmglawfirm.com
Catherine D. Tobin
Texas State Bar No. 24013642
Federal I.D. 25316
Email Catherine@hmglawfirm.com
John B. Martinez
Texas State Bar No. 24010212
Federal I.D. 23612
Email john@hmglawfirm.com
Marion Reilly
Texas State Bar No. 24079195
Federal ID No. 1357491

Email marion@hmglawfirm.com
Robert Howard George II
Texas State Bar No. 24067623
Email rgeorge@hmglawfirm.com

HILLIARD, MUÑOZ & GONZALES, L.L.P.
719 S. Shoreline, Suite 500
Corpus Christi, Texas 78411
(361) 882-1612
(361) 882-3015 [Fax]